# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valer Bagishvili,<br><br>       Petitioner,<br><br>v.<br><br>Chris Howard, et al.,<br><br>       Respondents. | No. CV-26-01137-PHX-RM (ASB)<br><br>**ORDER** |

Petitioner filed this action under § 2241, challenging his immigration detention. (Doc. 1.)  Petitioner alleged he was released from immigration detention in January 2023 on an Order of Release on Recognizance. (Doc. 1 at 5.)  The Court issued an Order to Show Cause ("OSC") why the § 2241 Petition should not be granted.  (Doc. 6.)  Upon review of the briefing, the Court will grant the Petition and direct Petitioner's immediate release from custody.

## I.    Background

Respondents' response indicates Petitioner entered the United States without inspection on January 24, 2023.  He was apprehended, issued a Notice to Appear and released into the United States on his own recognizance.  Petitioner was rearrested in January 2026. and is being held in immigration custody.

## II.    Discussion

Respondents maintain the "Due Process Clause did not prohibit Respondents from re-detaining Petitioner after he was encountered at a Border Patrol Checkpoint. Moreover,

there is no statutory or regulatory requirement that entitles Petitioner to a 'pre-deprivation' hearing. See generally 8 U.S.C. § 1226(a)." (Doc. 10 at 2.)

### A. Pre-Deprivation Hearing

Respondents did not address the cases cited in the Court's OSC or explain why they do not apply to this case. And the cases cited by Respondents are inapposite to the circumstances presented here. (*See id.* at 3-4.) Indeed, the only Ninth Circuit decision upon which Respondents rely is *Wong v. Immigration and Naturalization Service*, 373 F.3d 952 (9th Cir. 2004). (Doc. 10 at 8.) In *Wong*, the Ninth Circuit Court of Appeals addressed whether a noncitizen has a liberty interest in temporary parole. *See Wong*, 373 F.3d at 967. The court found that "[t]he INA does not create any liberty interest *in temporary parole* that is protected by the Fifth Amendment." *Id.* at 968 (emphasis added). "Rather, the statute makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General." *Id.*

The Court finds Respondents' reliance on *Wong* misplaced. First, Petitioner was not released on temporary parole in 2023, he was released on his own recognizance. More importantly, *Wong* addressed a discrete factual scenario where the petitioner alleged a due process violation by "revoking her parole status without first deciding her new adjustment of status petition." *Wong*, 373 F.3d at 959. No similar factual circumstances are present here. Rather, Petitioner asserts a constitutional liberty interest in release from Department of Homeland Security custody or, alternatively, a bond hearing. (Doc. 1 at 9-10.)

None of the other cases cited by Respondents support their position. First, Respondents cite *United States v. Cisneros*, No. 19-CR-00280-RS-5, 2021 WL 5908407, at *4 (N.D. Cal. Dec. 14, 2021), for the proposition that "[t]he law does not require a hearing before arrest where a noncitizen released from ICE custody had been picked up by the San Francisco Police Department for assault." (*Id.* at 3-4.) But that is because probable cause would be present to support an individual's arrest in the first instance.

Respondents also point to *Reyes v. King*, No. 19 CIV. 8674 (KPF), 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021), which held "the Court is not persuaded that it

should find a due process right to a pre-detention hearing where a noncitizen, subject to pending removal proceedings and in the midst of litigating a dispute over the BIA's decision to revoke his bond, is at risk of being re-detained after being at liberty for more than two years." But *Reyes* involved a scenario where there *was* a purported justification for revoking petitioner's bond and, moreover, the district court ordered petitioner to receive a bond hearing within seven days of being redetained if respondents elected to redetain him.

Finally, in *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *8 (N.D. Okla. June 12, 2025), while the district court determined the statutory scheme did not prohibit the revocation of petitioner's bond, the court did not address petitioner's constitutional claim.

Indeed, as stated in the OSC, there is a body of authority holding that individuals like Petitioner who were released from immigration detention on an order of recognizance are entitled to a pre-deprivation hearing prior to any rearrest or detention as a matter of due process. *See, e.g., Tinoco v. Noem*, ___ F. Supp. 3d ___, 2025 WL 3567862, at *2, *5-7 (E.D. Cal. Dec. 14, 2025) (granting petitioner's temporary restraining order for immediate release from custody where petitioner was released on an order of release on recognizance, re-detained three years later, and was not given a bond hearing); *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182-84 (D. Haw. 2025) (same); *Aguirre Solis v. Noem*, 2:26-cv-00053-RFB-EJY, 2026 WL 396432, at *2, *5 (D. Nev. Feb. 12, 2026) (concluding petitioner's re-detention after release on recognizance without a hearing and opportunity for release was unlawful under the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment and ordering his immediate release from detention).

The three-pronged test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)—which Respondents do not address—explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether procedural protections satisfy the Due Process Clause, courts

- 3 -

consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

As to the first factor, being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525, (2004) (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention). An individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). The first *Mathews* factor favors Petitioner.

As to the second factor, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." *Dushyant v. Albarran*, No. 1:26-cv-00502-JLT-SKO (HC), 2026 WL 682887, at *4 (E.D. Cal. Mar. 11, 2026) (citation omitted). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." *Id.* (citing *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). No neutral arbiter has determined whether the facts show that Petitioner is a flight risk or danger to the community. "Given the absence of any procedural safeguards to determine if his detention was justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" *Id.* (citation omitted). The Court concludes there is a risk of erroneous deprivation if no facts are provided to justify the re-detention of individuals without a neutral decisionmaker first

evaluating whether re-detention is warranted.  The second *Mathews* factor weighs in favor of Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).  Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  And Respondents' interest here is even lower because Petitioner was previously released on parole after immigration officials necessarily determined he was not a flight risk or danger to the community, and there is no indication Petitioner violated any condition of his parole.  *See Pinchi v. Noem*, No. 25cv05632-RMI, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025); *see also Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. July 11, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained."); *Telenchana v. Hermosillo*, 2:26-cv-00363-GJL, 2026 WL 696806, at *9 (W.D. Wash. Mar. 12, 2026) (concluding that re-detention of petitioners who had been released on their own recognizance violated due process under the *Mathews* framework because petitioners had "established liberty interests," "the absence of pre-deprivation procedures in their re-detentions created an unacceptably high risk of erroneous deprivations," and "the governmental interest in their re-detention without adequate process [was] minimal or non-existent").

The Court finds that the *Mathews* factors weigh in favor of determining Petitioner was entitled to a hearing before he was re-detained.  The Court finds that immediate release, rather than requiring a bond hearing, is the appropriate remedy.  *See Ruiz v. Noem*, No. 3:25-CV-03536-RBM-BJW, 2025 WL 3719888, at *2 (S.D. Cal. Dec. 23, 2025) ("[G]iven Respondents' 'weighty' interest in the 'efficient administration of the immigration laws,' *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), it does not make sense to require Respondents to set a new bond hearing before a potentially new immigration judge just to duplicate the

same efforts taken at the [previous] hearing."); *Ramirez Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at \*6 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release").

**B. Detention Under § 1225(b)(2)(A)**

Respondents also argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). But Respondents ignore the fact that Petitioner was placed in removal proceedings under section 212(a)(6)(A)(i) of the Immigration and Nationality Act as "[a]n alien present in the United States without having been admitted or paroled," and not as "an arriving alien" and applicant for admission under 8 U.S.C. § 1225(b). (Doc. 2-2 at 5.) The Court finds that Petitioner is not "seeking admission" such that he is subject to detention under § 1225(b)(2)(A). *See Echevarria v. Bondi*, CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282 (D. Ariz. 2025).

Additionally, the Court does not find that the entry fiction doctrine forecloses Petitioner's due process claim as to his present detention. The entry fiction doctrine is based upon the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens have "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Those noncitizens who are on the "threshold of initial entry" are not considered "to have 'effected an entry[.]'" *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693). Put differently, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien

is on U.S. soil, but the alien is not considered to have entered the country[.]" *Thuraissigiam*, 591 U.S. at 139. Therefore, while a citizen may be physically present within the country, they were "still in theory of law at the boundary line and had gained no foothold in the United States[.]" *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 257–58 (1925)).

Numerous courts in this district and its sister districts have found that the entry fiction doctrine is of limited application. Those courts have found that the entry fiction doctrine solely applies to the procedural rights of noncitizens regarding *admission*, not *every* procedure occurring in the immigration context—*i.e.*, the entry fiction doctrine is inapplicable to challenges of a petitioner's length of detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026)[1]; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (noting that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine is inapplicable).

For example, the district court in *D.V.D.* noted that in cases that provide an exception to the otherwise "geographic" scope of the Due Process Clause, "the due process rights impacted are only those 'regarding admission.'" *Id.* at *30 (quoting *Thuraissigiam*, 591 U.S. at 140). "This distinction arises near the very inception of the entry-fiction case law." *Id.* In *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court "contrasted the case of an immigrant who could not challenge his immigration officer's 'exclusive authority to determine whether a particular alien seeking admission into this country' was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor." *Id.* (quoting *Wong Wing*, 163 U.S. at 232–33, 235–38). The district court noted that although Wong Wing "presented the

---

[1]    Although *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, the Court is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, undersigned does not stand alone within the District of Arizona in relying upon *D.V.D. Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *3–4 (D. Ariz. Mar. 9, 2026).

particularly egregious circumstance of an 'infamous punishment,'" the Supreme Court expressed its holding in terms of the broader protections afforded by the Due Process Clause:

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 158 U.S. at 238). The court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." *Id.* (citing *Thuraissigiam*, 591 U.S. at 140).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases . . . as it may see fit.'" *Id.* (citation omitted). "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification." *Id.* (citing *Zadvydas*, 533 U.S. at 699). "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's admissibility." *Id.* (emphasis in original). Accordingly, where an immigration detainee challenges neither his order of removal nor any of the processes that produced those orders, his claims "do not implicate, nor even "relate[ ] to," the issue of [his] admissibility." *See id.* at *31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)). Petitioner is a "'person[]' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives his of his liberty interests. *Id.*

In short, neither bond hearings nor release equates admissions. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). "Thus, Petitioner does not purport to invoke any 'rights

regarding admission.'" *Id.* at 110 (quoting *Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 2026 WL 521557, at *30 ("It makes sense to distinguish between rights regarding admission and other interests that might be protected by the Due Process Clause.").

For all these reasons, the Petition will be granted, and Petitioner will be ordered released from custody immediately.

**IT IS ORDERED** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to the due process claim in Count Two.  The remainder of the Petition is denied as moot.

**IT IS FURTHER ORDERED** Respondents must **immediately release** Petitioner from custody under the same conditions that existed before his re-detention.

**IT IS FURTHER ORDERED** Respondents must provide a notice of compliance within **two (2) days** of Petitioner's release.

**IT IS FURTHER ORDERED** any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 22nd day of April, 2026.

_____
Honorable Rosemary Márquez
United States District Judge